UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHEREE DOUTHIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-03165-JMS-DLP |
| ) | |
| INDIANA UNIVERSITY HEALTH, INC, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on the Defendant's Motion to Enforce the Settlement Agreement and Award Attorneys' Fees, Dkt. [62]. This matter was referred to the Undersigned for a Report and Recommendation. (Dkt. 72).

**I.    Background**

Plaintiff Sheree Douthit initiated this lawsuit, by counsel, on December 10, 2020, in which she alleges claims of race discrimination, sexual harassment, and retaliation against her former employer, Defendant Indiana University Health, Inc. (Dkt. 1). At the initial pretrial conference, a settlement conference was originally set for September 24, 2021, and that date was continued several times at the parties' requests. (Dkts. 18, 30, 40, 50, 53). Plaintiff, Plaintiff's counsel, and Defendant's counsel all appeared in person for a settlement conference on April 11, 2022. (Dkt. 56). On April 13, 2022, the Undersigned docketed a minute entry stating that a settlement had been reached; all deadlines, schedules, and conferences were

1

vacated; and that the parties were to file a stipulation of dismissal within thirty (30) days. (Id).

On April 14, 2022, Plaintiff's counsel emailed the Undersigned's chambers, indicating that Plaintiff had expressed an interest in revoking her consent to settle this matter, and requested an in-person status conference to address this issue. Plaintiff's counsel was directed to file a formal motion requesting an in-person status conference, and said motion was filed on April 18, 2022. (Dkt. 57). The Court granted that request and set an in-person status conference for June 1, 2022. (Dkt. 58). Plaintiff did not appear in person for the June 1, 2022 status conference, but she participated by telephone. After that conference, on June 2, 2022, Plaintiff's counsel filed a motion to withdraw her appearance, and that request was granted on June 16, 2022. (Dkts. 59, 63). On June 10, 2022, Defendant filed the present Motion to Enforce the Settlement Agreement and for Attorneys' Fees. (Dkt. 62). Plaintiff, now *pro se*, requested two extensions of time to respond to Defendant's motion and the Court granted those requests, giving Plaintiff through August 3, 2022 to file her response. (Dkts. 65, 68). Plaintiff filed a late response on August 4, 2022. (Dkt. 69). At the August 5, 2022 telephonic status conference, the Court accepted Plaintiff's late response over the Defendant's objection, and gave Defendant through August 11, 2022 to file a reply. (Dkt. 70). Defendant filed a reply on August 11, 2022. (Dkt. 71).

## II.     Legal Standard

An employee may waive a federal employment discrimination claim in private settlements with their employers. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009); *Pierce v. Atchison, Topeka & Santa Fe. Ry. Co.,* 65 F.3d 562, 570-71 (7th Cir. 1995). State contract law typically governs issues concerning the formation, construction, and enforcement of settlement agreements. *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016); *see also Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002) ("a settlement agreement is enforced . . . just like any other contract). In the federal employment discrimination context, however, a requirement is added that the employee must consent to the settlement agreement "knowingly and voluntarily." *Pierce,* 65 F.3d at 571.

An employee may present defenses to the enforceability of a settlement agreement under state law or in response to the knowing and voluntary requirement. *Hampton*, 561 F.3d at 716. If an employee argues that the settlement agreement was not entered into "knowingly and voluntarily," the Court looks to the "totality of the circumstances" surrounding the execution of the agreement. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). The Court makes this inquiry when the party challenging the agreement comes "forward with specific evidence sufficient to raise a question as to the validity of the release." *Pierce v. Atchison Topeka & Santa Fe. Ry. Co.*, 110 F.3d 431, 438 (7th Cir. 1997).

### III. Discussion

#### A. Valid Contract

Indiana law governs whether Ms. Douthit and the Defendant entered into a valid, enforceable settlement agreement. *See Carlson v. CSX Trans., Inc.,* 710 Fed. App'x 700, 702 (7th Cir. 2017). "Under Indiana law, a person is presumed to understand and assent to the terms of the contracts [s]he signs." *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003). "All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required. Only essential terms need be included to render a contract enforceable." *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009).

The parties signed a Settlement Agreement during the April 11, 2022 settlement conference that indicates that the Defendant will pay the Plaintiff a particular sum for the dismissal of the present case[1]. Courts routinely conclude that settlement agreements are enforceable when they include material terms of payment for dismissal of the suit. *See Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010) ("We find that the material terms were definite and certain: defendants would pay $6,000 to the Elustras in exchange for their dismissal of the lawsuit."); *see also Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (agreement was

---

[1] The parties' settlement agreement includes a confidentiality and non-disclosure clause, and the parties do not reference the settlement amount in their filings, thus the Court will not disclose the settlement amount in this Opinion.

4

enforceable because it sufficiently defines the parties' intentions and obligations, namely that plaintiff would voluntarily dismiss her claim if the defendant paid her $210,000). The Undersigned discussed the material terms of the agreement with Ms. Douthit and her counsel. After the parties signed the Settlement Agreement, the Undersigned's staff made copies of the final Agreement, gave the original signed copy to the Defendant, distributed copies to Plaintiff and her counsel, and maintained a copy for the Undersigned's records. Accordingly, the Undersigned recommends that the Court conclude that the parties signed a valid contract at the April 11, 2022 settlement conference.

**B. Defenses to a Valid Contract**

In this case, Plaintiff challenges the enforceability of the Settlement Agreement signed at the April 11, 2022 settlement conference for four reasons: (1) the settlement agreement was the result of misrepresentation, fraud, duress, and mistake; (2) Plaintiff never foreclosed her right to rescind the agreement[2]; (3) the agreement is unconscionable and against public policy and, therefore, unenforceable; and (4) the Magistrate Judge lacked jurisdiction to settle this case. (Dkt. 69). The Court will address each argument in turn.

*a. Involuntariness of Consent*

Although the Settlement Agreement is valid under Indiana state law, as stated above, when an employee challenges her assent to a release as having been unknowing and involuntary, a court must examine the "totality of the

---

[2] Because arguments one and two are intertwined, the Court will consider them together.

circumstances" surrounding the release. *Pierce*, 65 F.3d at 571. The Seventh Circuit has stated that looking to the totality of the circumstances means evaluating a number of factors, including, but not limited to:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Hampton v. Ford Motor Co.*, 561 F.3d 709, 716–17 (7th Cir. 2009) (quoting *Pierce*, 65 F.3d at 571). In cases where a plaintiff is represented by chosen counsel throughout negotiations and settlement, and especially a counsel knowledgeable in the field of employment discrimination, the release is "presumptively informed and willing, absent circumstances such as fraud or duress which would violate state contract principles as well as federal policy behind such waivers." *Riley v. Am. Family Mut. Ins. Co.,* 881 F.2d 368, 374 (7th Cir. 1981). Plaintiff's chosen counsel, Ms. Amber Boyd, has significant experience representing plaintiffs in the employment discrimination field and has appeared frequently before this Court.

Ms. Douthit claims that her consent was the result of duress and undue influence on the part of both her counsel and Defendant's counsel because they both mispresented her claim of retaliation. (Dkt. 69 at 5-6). Plaintiff also argues that the Defendant "made a fraudulent or negligent misrepresentation when it produced or failed to produce discovery in which consideration was being valued or determined"

6

and that the Defendant falsely asserted that Plaintiff had been "terminated for performance." (Id. at 6-7). Similarly, Ms. Douthit maintains that she did not understand the terms of the settlement agreement, there was no discussion of the meaning of the material terms, and her counsel did not advocate for her interests zealously enough at the settlement conference or after she desired to revoke her consent to settle. (Id. at 11-13).

First, it must be noted that buyer's remorse is not a valid reason for this Court to find that the parties' Settlement Agreement is unenforceable. *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) (finding that once a party has authorized a settlement agreement, she is bound to its terms even if she later changes her mind). Second, although Ms. Douthit essentially claims that she did not sign the Settlement Agreement knowingly or voluntarily, the Court should find this claim unsubstantiated. The Undersigned spent almost five hours with the parties at the April 11, 2022 settlement conference, with Plaintiff and her counsel in a room separate from the Defendant's counsel. The Undersigned discussed the relevant discovery that had been produced, and its application to the pending claims with the Plaintiff. Plaintiff has significant experience as a nurse and she spoke at length with the Undersigned about her job with the Defendant, her employer's management structure, and her educational background. The Plaintiff was also extensively engaged in the negotiations with her counsel. During negotiations, neither Defendant nor its counsel had any interaction with Plaintiff as to the specifics of the Settlement Agreement and could not have coerced or forced her to

7

sign said agreement. Moreover, the Undersigned counts no fewer than three separate paragraphs within the Settlement Agreement that indicate that Ms. Douthit was explained the material terms of the Settlement Agreement by her counsel and was signing the contract knowingly and voluntarily, with the last paragraph occurring on a line directly above where Ms. Douthit signed her name. Before signing the Settlement Agreement, the Undersigned confirmed with the Plaintiff that she understood the terms, and that she did not have any additional questions.

It appears that the majority of Plaintiff's concerns with the Settlement Agreement center on her complaints related to her counsel's representation. However, "the adequacy or propriety of counsel's advice is irrelevant to the question of whether a settlement was knowing and voluntary." *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007), as amended (Mar. 26, 2007) (citing *Riley*, 881 F.2d at 373-74). Additionally, attacks on the adequacy of counsel's representation "neither negate the presumption created by representation by counsel nor demonstrate the kind of fraud or duress capable of rebutting that presumption."[3] *Id.* at 490-91. If Ms. Douthit is attempting to claim that her counsel engaged in

---

[3] Fraud in the inducement is a claim against the opposing party; Ms. Douthit has not claimed that the Defendant fraudulently induced her to sign the Settlement Agreement. Duress, too, is a claim against the other party to the contract, and it requires more than vexation, the stress of a difficult bargaining position, or financial pressure; duress requires "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness[es] of another." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995). Furthermore, a party asserting duress cannot prevail if she had an alternative to entering into the agreement. *Id.* Ms. Douthit had the option of taking her claims to trial, and any claim of duress would necessarily fail. Moreover, although Ms. Douthit mostly blames her own counsel, she never makes a cognizable claim that the Defendant took advantage of her.

improper conduct, either by not zealously representing her, persuading her to enter into the settlement, or by failing to explain the terms of the settlement, her remedy lies in malpractice rather than in invalidating the settlement agreement. *White v. Lowe's Home Centers, Inc.*, No. 2:12-CV-001-JD-PRC, 2012 WL 5497853, at *8 (N.D. Ind. Nov. 13, 2012) (citing *Baptist*, 481 F.3d at 490–91 (noting that "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice")).

Looking to the totality of the circumstances, Plaintiff has sufficient educational background and management experience; she was represented by counsel; the agreement itself is clear and appears to be a standard release; Plaintiff and her counsel had adequate time to discuss the terms of the agreement and Plaintiff had an opportunity to voice opposition to said terms before signing the agreement; and the settlement reached was a good result for the Plaintiff given the burden she would face in taking her claims to trial[4]. Thus, the Undersigned recommends that the Court find that the settlement was knowing and voluntary in this case.

b. *Unconscionability of Terms*

Next, Plaintiff contends that the Settlement Agreement is unconscionable and against public policy and, therefore, unenforceable. (Dkt. 69 at 7-11).

---

[4] "As long as the person receives something of value in exchange for her own promise or detriment, the courts will not inquire into the adequacy of the consideration." *Singleton v. Amita Health*, No. 17 C 4514, 2018 WL 7050842, at *13 (N.D. Ill. Sept. 25, 2018), *report and recommendation adopted*, No. 17 C 4514, 2018 WL 6445161 (N.D. Ill. Dec. 10, 2018), aff'd, 799 F. App'x 942 (7th Cir. 2020) (quoting *Baptist*, 481 F.3d at 491-92).

Specifically, the Plaintiff maintains that the Settlement Agreement is ambiguous in defining the "released parties," the nature of the confidentiality clause, and the extent of the "no future association clause." (Dkt. 69 at 8-11). The Defendant maintains in response that the Plaintiff had ample opportunity prior to and during the settlement conference to review these terms with her counsel and obtain clarification as to the meaning of any provisions. (Dkt. 71 at 4-5). The Court agrees.

As noted previously, the Settlement Agreement contains no fewer than three provisions stating that Plaintiff has read and understood the terms to which she is agreeing. It is important to note that the first paragraph of the Settlement Agreement contains a list of definitions, and included within this list is the parties' definition of "released parties." In addition, paragraph four of the agreement outlines the extent of the confidentiality clause, while paragraph ten explains the "no future association" provision. Plaintiff's bare representation that she does not understand the terms of the Agreement does not constitute a basis to deem it unenforceable. *See Clark v. Fam. Dollar Stores of Indiana, LLC*, No. 1:20-CV-01569-JPH-MG, 2021 WL 8269511, at *3 (S.D. Ind. Oct. 15, 2021), report and recommendation adopted, No. 1:20-cv-01569-JPH-MG, 2022 WL 2301898 (S.D. Ind. June 23, 2022) (citing *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003) ("Under Indiana law, a person is presumed to understand and assent to the terms of the contracts [s]he signs."); *see also Cornell v. Delco Elecs. Corp.*, 103 F. Supp. 2d 1116, 1120 (S.D. Ind. 2000) (Generally, "[a] party cannot avoid a contract in Indiana unless [s]he was of unsound mind when [s]he entered the agreement and

10

had no reasonable understanding of the contract's terms due to h[er] instability.") Plaintiff has not put forth any evidence of fraud or duress or that she was of an unsound mind when she entered into this Settlement Agreement, and thus has failed to rebut the presumption that she understood and assented to the terms of the agreement.

Ms. Douthit also seems to argue that the Settlement Agreement contains an invalid covenant not to compete through the "no future association" clause. Instead, on the Court's review, the Agreement contains a provision whereby Plaintiff waives any future association, employment, or contractual relationship with any of the released parties. As Defendant notes, the Agreement places no restriction on any other similar entity for whom Plaintiff may choose to work in the future. As such, Plaintiff's argument regarding both the meaning of the Agreement's terms and the existence of the "no future association" clause should be found not to have merit.

c. *Magistrate Judge Authority*

Finally, Ms. Douthit argues that the Undersigned lacked authority to conduct the settlement conference because she did not expressly consent to the Undersigned's jurisdiction. (Dkt. 69 at 13). As discussed by the Defendant, Magistrate Judges have jurisdiction to hear pre-trial matters. Moreover, Magistrate Judges are used in this district[5] as settlement facilitators. *See Auto-Owners Ins. Co.*

---

[5] *See Attorney's Handbook, United States District Court for the Southern District of Indiana*, https://www.insd.uscourts.gov/sites/insd/files/Attorney%20Handbook.pdf (last visited August 15, 2022) ("In this district, the Judges most often utilize the Magistrate Judges as settlement facilitators. The assigned Magistrate Judge may schedule a settlement conference involving the parties and their counsel at one or more strategic times during the course of pretrial proceedings in a civil action. The Magistrate Judges act in much the same way as a mediator might when cases in state court are referred to mediation. In addition, the court has adopted Local Rules of Alternative

*v. Yamaha Motor Corp., U.S.A.*, No. 2:09-CV-191-WTL-WGH, 2010 WL 3398930, at *2 (S.D. Ind. Aug. 25, 2010) ("In this district, and in this circuit, it is well-settled that a district court may convene a conference under Rule 16 to discuss settlement. *See* Fed. R. Civ. P. 16 and S.D. Ind. Local Rule 16.1(c))." Perhaps more important, Plaintiff raised no objection to the Undersigned's scheduling order setting a settlement conference in the more than one year time frame prior to the April 11, 2022 settlement conference, nor was any objection raised at the conference or at the time of the signing of the agreement. This untimely objection was not raised until the Plaintiff's response brief filed on August 4, 2022. (Dkt. 69). Plaintiff has presented no credible authority indicating that the Undersigned was not permitted to conduct a settlement conference in this matter; thus, the Undersigned recommends that the Court find this reason insufficient to otherwise invalidate the settlement agreement.

### C. Attorney Fees

Defendant requests attorney fees for having to bring the present motion and attend the June 1, 2022 and June 30, 2022 status conferences. (Dkt. 62 at 5). Defendant, however, provides no further argument in support of this request beyond the one conclusory sentence. This assertion is undeveloped and thus waived. *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 511 (7th Cir. 2020) (finding perfunctory and undeveloped arguments that are unsupported waived).

---

Dispute Resolution, which provide for mediation by qualified mediators outside the court, if the parties elect to pursue the same. Those Local Rules also point out that the parties are free to pursue other dispute resolution methods which may be available to assist the parties in reaching a final outcome.")

Accordingly, the Undersigned recommends that the Court not award the Defendant attorney fees at this time.

## IV. Conclusion

For the reasons set forth above, the Undersigned recommends that the Defendant's Motion to Enforce the Settlement Agreement and Award Attorneys' Fees, Dkt. [62], be **GRANTED IN PART**, and that any obligations owed under the Settlement Agreement should be completed within fifteen (15) days of the Court's order. The request for attorney fees should be **DENIED**.

So ORDERED.

Date: 8/18/2022

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

SHEREE DOUTHIT
4585 Chase Oak Court
Zionsville, IN 46077